[Crim. No. 3460. Fifth Dist. May 23, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ARTHUR BETTERTON, Defendant and Appellant.

**COUNSEL**

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Gary S. Goodpaster, Chief Assistant State Public Defender, and Mark L. Christiansen, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Ramon M. de la Guardia, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BEST, J.**\*—On August 3, 1977, a complaint was filed in West Kern Municipal Court charging appellant in count one with violating Penal Code section 417 (exhibiting a firearm in a rude, angry and threatening manner); in count two with violating Penal Code section 12021 (felon in possession of a concealable firearm); in count three with violating Penal Code section 12031, subdivision (a) (carrying a loaded firearm in a vehicle); in count four with violating Penal Code section 12025, subdivision (a) (carrying a concealed firearm in a vehicle without a license to carry such firearm); and in count five with violating Penal Code section 12021. Counts one and two allegedly occurred on July 31, 1977, and counts three, four and five on August 1, 1977.

On August 26, 1977, pursuant to Penal Code section 859a, appellant entered a plea of guilty to count two, a felony violation of Penal Code section 12021, and the remaining counts, together with a separately pending kidnaping charge, were dismissed upon motion of the district attorney. The case was certified to the superior court for further proceedings.

On September 23, 1977, appellant was sentenced to state prison for the upper term of three years upon the trial court's finding of two circumstances in aggravation; (1) the crime involved threat of great bodily harm, and (2) the defendant has engaged in a pattern of violent conduct indicating a serious danger to society. (Cal. Rules of Court, rules 421(a)(1) and 421(b)(1).) Since no preliminary examination was held, the only information upon which the court based its findings of aggravating circumstances was contained in the probation officer's report.

At about 1:30 p.m. on July 31, 1977, appellant's ex-wife, Beatrice Wren, Wren's cousin and the cousin's daughter reported to the sheriff's office the following:

Wren and her cousin were in the back porch area of her residence when they observed appellant enter through the front door. Appellant had his hand behind his back. He told the cousin to leave, which she did, taking her daughter from the adjoining bedroom with her. As the cousin left, she heard appellant state that he had a gun. She turned and observed what appeared to be a gun held by appellant behind his back. The daughter also observed appellant holding a gun behind his back.

---

\*Assigned by the Chairperson of the Judicial Council.

Appellant pointed the gun at Wren's chest and advised her that he would kill her if she did not comply. She refused, whereupon appellant choked Wren into unconsciousness and she fell to the floor. The cousin stated that she did not observe this but did hear scuffling during this period.

When Wren regained consciousness, appellant again threatened her, telling her that if she did not go with him he would kill her children. Appellant then called Wren's five-year-old daughter, who came in. Appellant squatted down, holding the gun behind his back, and spoke to the child, telling her he would not harm her. Wren directed the child to leave. Appellant told her to stay. The child left the house.

Appellant told Wren that if she called the sheriff he would kill her and then himself. He then left the residence.

Wren, her cousin, and the cousin's daughter related these events to the sheriff's officers. Wren further stated that she would seek a complaint, and the sheriff's office put out an all-points bulletin on appellant.

The next day at about 7:43 p.m., August 1, 1977, sheriff's officers responded to a disturbance in the Oildale area. An unidentified subject stated that his car had nearly been struck by a car being driven erratically. Officers located the driver, later identified as Eugene Ross, who stated that appellant was after him and had pointed a gun at him from the car. Officers then learned that appellant had been stopped by another officer nearby. The officers responded to that location and placed appellant in custody.

After removing appellant from the area, leaving the vehicle with appellant's wife, officers returned and searched the car, finding a .22 caliber sawed-off rifle therein. Appellant was booked into county jail. The complaint filed two days later charged appellant with two counts of violation of Penal Code[1] section 12021, one count of violation of section 12031, subdivision (a), and one count of violation of section 12025, subdivision (a), as well as violation of section 417.

■ Appellant's major contention is that the sentencing procedure provided by section 1170, subdivision (b), deprived him of his constitutional rights of adequate notice, trial by jury, confrontation and proof beyond a reasonable doubt. He argues that imposition of the upper term

---

[1]All references to code sections are to the Penal Code unless otherwise stated.

of three years rather than the middle term of two years necessarily involved factual findings by the sentencing judge of aggravating circumstances which were not elements of the crime to which appellant pleaded guilty and, therefore, *Specht* v. *Patterson* (1967) 386 U.S. 605 [18 L.Ed.2d 326, 87 S.Ct. 1209], together with *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] and *Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444], requires that he be afforded the full panoply of rights mandated in state criminal proceedings. We disagree.

In *Williams* v. *New York* (1949) 337 U.S. 241 [93 L.Ed. 1337, 69 S.Ct. 1079], the United States Supreme Court held there was no deprivation of due process where the sentencing judge relied on information not obtained through formal proceedings and where the defendant was not given the opportunity of confronting and cross-examining the persons from whom the information was obtained. The holding in *Williams* was construed to be that: ". . . the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed." (*Specht* v. *Patterson, supra,* 386 U.S. at p. 606 [18 L.Ed.2d at p. 328].) The court in *Williams* further concluded that the "due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice." (*Williams* v. *New York, supra,* 337 U.S. at p. 251 [93 L.Ed. at p. 1344].)

As stated in *People* v. *Nelson* (1978) 85 Cal.App.3d 99, 101 [149 Cal.Rptr. 177], "In an era when constitutional principles are as evanescent as last year's fashions, it is comforting to know that the *Williams* case 'is still good law.' (*People* v. *Peterson* (1973) 9 Cal.3d 717, 726. . . .)" (See also *United States* v. *Tucker* (1972) 404 U.S. 443, 446-447 [30 L.Ed.2d 592, 595-596, 92 S.Ct. 589].)

In *Nelson* the court rejected a challenge to the constitutionality of rule 439, California Rules of Court, which permits imposition of the upper term of imprisonment upon a finding of aggravated circumstances by a preponderance of the evidence rather than beyond a reasonable doubt. There, as here, the defendant placed reliance upon *Specht* v. *Patterson, supra,* 386 U.S. 605, and upon *People* v. *Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352] and *People* v. *Thomas* (1977) 19 Cal.3d 630 [139 Cal.Rptr. 594, 566 P.2d 228] extending the beyond a reasonable doubt standard of proof to commitment proceedings for sex offenders

and narcotics addicts, respectively. The *Nelson* court pointed out that none of these cases involved sentencing but, rather, were cases in which a criminal conviction triggered separate and different proceedings having the potential of depriving the convicted person of his liberty, perhaps exceeding the maximum term possible under the criminal conviction, and of stigmatizing a "defendant with a socially opprobrious label over and above that which attached upon conviction of the underlying crime." (*People* v. *Nelson, supra,* 85 Cal.App.3d at pp. 101-102.)

In *Specht* v. *Patterson, supra,* the United States Supreme Court was called upon to decide whether Specht, having been convicted of indecent acts under a Colorado criminal statute providing a maximum sentence of ten years, but not sentenced under it, could, without notice and full hearing, be sentenced under the Colorado Sex Offenders Act for an indeterminate term of one day to life. The Supreme Court reaffirmed the rule of the *Williams* case but declined to extend it to "this radically different situation." (*Specht* v. *Patterson, supra,* 386 U.S. at p. 608 [18 L.Ed.2d at p. 329].) The court reasoned that the sex offenders act involved a separate criminal proceeding requiring a new finding of fact that was not an element of the crime for which Specht stood convicted which could lead to additional criminal punishment. In other words, the court likened the proceedings under the sex offenders act to a new, separate and different criminal proceeding in which Specht must be afforded all the safeguards which are fundamental rights and essential to a fair trial in state criminal proceedings.

As of the date of *Specht,* due process had not yet been held to require, in state criminal proceedings, application of the beyond a reasonable doubt standard or jury trial. However, post-*Specht* cases added these rights. (*In re Winship, supra,* 397 U.S. 358; *Duncan* v. *Louisiana, supra,* 391 U.S. 145.)

Unlike the proceedings in *Specht, Burnick* and *Thomas,* the aggravation procedure provided by the determinate sentence law does not involve new, separate and different criminal proceedings under a separate statute. Rather, the determinate sentence law makes the commission of a specified crime the basis for sentencing. It allows, with certain limited exceptions, for trial court discretion as to two basic sentencing choices: prison versus probation and middle term versus upper or lower term. Regarding the latter sentence choice, section 1170, subdivision (a)(1), states in pertinent part: "The Legislature further finds and declares that the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences

fixed by statute in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion."

The sentencing procedure under section 1170, subdivision (b), by which the court imposes legislatively determined sentences for the charged offense with specified discretion more closely resembles traditional sentencing concepts under *Williams* v. *New York, supra,* 337 U.S. 241, than it does the independent proceedings involved in *Specht, Thomas* and *Burnick.* We find no denial of due process in the sentencing procedures provided by section 1170, subdivision (b) and followed in this case.

Appellant contends that the information contained in the report of the probation officer was unreliable and so highly prejudicial that its consideration by the sentencing court constituted a denial of due process.

It should first be noted that the sentencing judge is legislatively mandated to consider the circumstances of the offense as well as the prior history and record of the defendant. (§ 1170, subd. (b); Cal. Rules of Court, rules 410, 414, 416, 421, 423, 425, 433, 437 and 439; *People* v. *Cheatham* (1979) 23 Cal.3d 829, 836 [153 Cal.Rptr. 585, 591 P.2d 1237].)

Section 1203 requires that a probation officer's report be obtained in any case where a person is convicted of a felony and is eligible for probation, and California Rules of Court, rule 418, states that regardless of the defendant's eligibility for probation the sentencing judge should refer the matter to the probation officer for an investigation and report.

Section 1170, subdivision (b),[2] and California Rules of Court, rule 439 (b),[3] specifically state that the sentencing judge in selecting either the

---

[2]Section 1170, subdivision (b), provides: "(b) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. At least four days prior to the time set for imposition of judgment either party may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts. In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing. The court shall set forth on the record the facts and reasons for imposing the upper or lower term. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section 667.5, 1170.1, 12022, 12022.5, 12022.6, or 12022.7. A term of imprisonment shall not be specified if imposition of sentence is suspended."

[3]California Rules of Court, rule 439 (b), provides: "(b) Selection of the upper term is justified only if, considering the entire record of the case, including the probation officer's

upper or lower term is to consider, among other things, the probation officer's report.

Implicit in our holding above is that the provisions authorizing the sentencing judge to consider the probation officer's report in making his sentencing choice do not deprive a defendant of due process.

Appellant argues, however, that in order to conform to due process requirements, information contained in the probation officer's report must be accurate and reliable. His challenge, therefore, is to the integrity of the information contained in that report.

In *People* v. *Medina* (1978) 78 Cal.App.3d 1000 [144 Cal.Rptr. 581], the defendant claimed he was denied a fair probation and sentencing hearing because of improper material contained in the probation officer's report. The court held that a necessary predicate to appellate consideration of said claim was an objection to allegedly improper entries in the trial court and an erroneous ruling thereon.

Our review of the record in this case discloses that the only objection to the contents of the probation officer's report was that the report contained hearsay matter pertaining to the section 417 charge that had been dismissed in the municipal court.

It is settled law that hearsay information is properly includable within a probation officer's report. In *People* v. *Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832], the court stated: "A probation officer could not make an investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information. It is clear that Penal Code, section 1203, contemplates the inclusion of hearsay matter in the probation officer's report."

---

report, other reports properly filed in the case, and other competent evidence, circumstances in aggravation are established by a preponderance of the evidence and outweigh circumstances in mitigation. Selection of the lower term is justified only if, considering the same facts, circumstances in mitigation are established by a preponderance of the evidence and outweigh circumstances in aggravation."

■ Appellant contends that the trial court erroneously considered facts not related to the crime to which he pled guilty, to find circumstances in aggravation. He argues that he was sentenced to the upper term based on his alleged violation of section 417.

Appellant entered his plea of guilty to count two of the complaint charging a violation of section 12021 on July 31, 1977. The circumstances of that offense were attested to by Mrs. Wren in her report to the sheriff's officers in which she stated that appellant pointed the gun at her chest and threatened her and her children.

In *People* v. *Cheatham, supra,* 23 Cal.3d 829, 835, the court quotes with approval the Judicial Council of California's Annual Report (1978) page 16: " '. . . The phrase, "circumstances in aggravation or mitigation of the crime" necessarily alludes to extrinsic facts.' . . . [¶] . . . '. . . The California Supreme Court has held that sentencing decisions must take into account "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." [Citations.] . . .' "

Appellant pled guilty to count two, the circumstances of which were set forth in the probation officer's report, and the report provided the factual basis for the court's finding that appellant possessed a firearm in such a manner that he threatened another with great bodily harm. Such threat was properly considered as a circumstance in aggravation of the crime of violating section 12021.

■ Finally, appellant contends that the trial court erroneously considered facts relating to him in imposing the higher term, particularly factors relating to the pattern of violent conduct. Again, *People* v. *Cheatham, supra,* 23 Cal.3d at page 836, disposes of this claim. The court states: "As previously noted, a probation report covers not only 'the circumstances surrounding the crime,' but also 'the prior history and record' of the defendant. (§ 1203, subd. (a).) 'As used in section 1203, "history" is a catchall term used to refer to the multitude of factors, in addition to the circumstances surrounding the crime and the defendant's prior record, which properly may be considered in determining whether the defendant should be granted probation.' [Citation.] . . . The most reasonable explanation of this provision is the obvious one: that the Legislature intended the sentencing court to consider the defendant's prior history and record, as well as facts relating to the commission of the

crime, in determining whether there are circumstances that justify imposition of the upper or lower term."

Given that the sentencing court may consider all the aspects of the probation officer's report, the court's finding of a pattern of violent conduct is amply supported by the report of the probation officer. The events of July 31 and August 1 are set forth therein with some particularity. This report also contains a statement by Mrs. Wren concerning the stormy course of her marriage to appellant along with a statement of continuing threats against her and others.

Appellant's rap sheet was also available therein which indicated the other charges brought against appellant as a result of his conduct of July 31 and August 1, and for which he was arrested.

There is no indication in the record of this case that the trial court did more than consider the circumstances of the crime to which appellant pled guilty and factors relating to appellant's background in deciding to impose the upper prison term. This is clearly within the exercise of the sentencing judge's discretion.

The judgment is affirmed.

Franson, Acting P. J., and Zenovich, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1979.