[No. F001757. Fifth Dist. June 22, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
DONNELL BRYANT, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Part III is not published as it does not meet the standards for publication contained in California Rules of Court, rule 976(b).

584

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Lisa Short, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gregory W. Baugher and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HANSON (P. D.), J.—

I

 In this appeal we hold that the prosecutor's remarks to a defense witness at appellant's probation revocation hearing, indicating the witness would be charged with perjury if he testified in accordance with his preliminary hearing testimony, denied appellant his fundamental rights to due process of law and his constitutional right to a fair hearing.

In 1981, appellant pleaded guilty to a violation of Health and Safety Code section 11378.5 (possession for sale of phencyclidine) in Kern County Superior Court No. 22747, on condition he be admitted to felony probation and serve no more than six months in county jail.

In 1982, appellant was arrested by officers of the Bakersfield Police Department for an alleged violation of Health and Safety Code section 11377 (possession of phencyclidine); thereafter, a criminal complaint was filed and a preliminary hearing held; an arraignment and not guilty plea followed. An information was filed in Kern County Superior Court (case No. 24518) charging appellant with possession of phencyclidine, and appellant pleaded not guilty. On the basis of this arrest, a hold was placed on appellant in county jail, and the probation department requested the revocation of appellant's probation. After a contested hearing, appellant's probation in case

No. 22747 was revoked and the prosecution's motion to dismiss case No. 24518 was granted.

Appellant was denied reinstatement of probation, was sentenced to the middle term of four years on the conviction in case No. 22747, and filed timely notice of appeal.

STATEMENT OF FACTS

*Case No. 24518, the Basis of the Revocation*
*of Probation in Case No. 22747.*

While on patrol with Officer Roger Ott on September 24, 1982, Officer Paul Mudryk of the Bakersfield Police Department observed a car swerve over the center line into the opposite lane; the car had no rear license plate. As Mudryk stopped the vehicle, he observed appellant, who was a passenger, look over his shoulder at the officers and lean forward. After the car stopped, Mudryk approached the vehicle on the passenger side and allegedly observed appellant trying to push an amber Schilling bottle between the seat cushions of the car. Mudryk claimed he could smell ether from outside the car which he associated with phencyclidine (PCP).

Lynn James Harris, the driver who claimed to be the car's owner, allegedly consented to a search of his car. Mudryk then seized the Schilling bottle from the area where appellant was sitting. Two boxes of partially used Sherman brand cigarettes also were removed from the car. Appellant subsequently was arrested for possession of PCP; Harris was not arrested. The Schilling bottle was analyzed and contained half a cigarette wrapped in brown paper, coated with a usable amount of PCP.

Appellant's testimony disagreed with that of the police officers; he testified the only thing in his possession when the car was stopped was a half-full box of Sherman cigarettes which he voluntarily handed to Mudryk when he was detained. Appellant also testified the Schilling bottle discovered by Mudryk did not belong to him.

DISCUSSION

II

Appellant contends the prosecutor's remarks to defense witness Harris at appellant's probation revocation hearing, that Harris would be charged with

perjury if he testified at the revocation hearing as he did at the preliminary hearing, denied appellant his fundamental rights to due process and compulsory process. Harris subsequently refused to take the stand claiming his Fifth Amendment privilege against self-incrimination. We conclude that by coercive state action a material witness was made unavailable at appellant's revocation hearing, and reversal is mandated by due process and appellant's constitutional right to a fair trial. (*People* v. *Mejia* (1976) 57 Cal.App.3d 574, 579 [129 Cal.Rptr. 192].)

During the probation revocation hearing, defense witness Harris was called to the stand. Other than appellant and police officers, Harris was the *only* witness to the search of the car, the seizure of the bottle and cigarettes, and the arrest of appellant. The prosecutor immediately declared that perjury proceedings had been instituted against Harris because in the prosecutor's opinion the witness had "lied at the preliminary hearing about these same . . . facts." The following colloquy took place:

"MR. GIUFFRE [Defense Counsel]: I would like to call Lynn James Harris to the stand, please.

"MR. WITT [Prosecutor]: And I would point out to the court, your Honor, that I am personally prosecuting Mr. Harris for perjury when he, in my opinion, lied at the preliminary hearing about these same set of facts. His preliminary hearing [on the perjury charges] is due, I believe, December 7th at 9:30 in Division F across the street in Municipal Court.[2]

"So I would want to point that out on the record for the court's attention.

"THE COURT: You mean you have charged him with perjury?

"MR. WITT: I have charged him with perjury. He has been arraigned and pled not guilty and his preliminary hearing on the matter is set for the 7th.

"The perjury incident results [*sic*] when he testified for the defense at the preliminary hearing on these same set of facts, your Honor.

---

[2]Defense counsel heard only the night before the hearing of the pending charges against Harris.

"So, for the record, I want to point that out to the court. I have no objection if Mr. Harris wants to testify.

"In fact, it would help my case next week, but in all fairness to Mr. Harris and the court, I would like to point that out now.

"MR. GIUFFRE: I believe the court should discuss the matter fully with Mr. Harris prior to his testimony.

"THE COURT: Mr. Harris, will you raise your right hand and take the oath."

Once Harris was sworn as a witness, the prosecutor stated that he "would like to inform Mr. Harris . . . that if he . . . testifies . . . essentially [to] the same things . . . he did before, in [his] opinion that again would be perjury and he [Harris] would be facing another count."[3] The prosecutor's statement was couched in the form of a threat.

The above statement went far beyond reminding the witness of the duty to tell the truth or advising him of the consequences of perjured testimony, and in fact revealed the prosecutor's "expectation" that the witness' testimony would be perjurious if favorable to appellant, as was his preliminary hearing testimony. Moreover, the prosecutor was fully aware that Harris understood his duty to tell the truth and the consequences of committing perjury because of his explanations to the witness at the preliminary hearing.[4]

---

[3]Respondent claims the above statements by the prosecutor, including the subsequent explanation of the background of the perjury charge, were made outside the presence of the witness. As a factual basis for this claim, respondent points to the statement of the trial court after Harris took the stand to the effect that the prosecutor's statements were made before Harris got there: "Q. Mr. Harris, just before you got here, Mr. Witt told me that he had filed a perjury charge against you and that it was coming up next week. I assume that this is correct; is that right? [¶] A. Yes, sir."

Appellant asserts that a more logical explanation places the witness in the courtroom at the time of the prosecutor's preliminary remarks concerning the perjury charge, because chronologically in the transcript, the witness formally was called to the stand by defense counsel before the prosecutor initiated his admonitions to the court concerning the pending perjury charge.

The factual question need not be resolved to decide the merits of the issue, because the prosecutor subsequently *repeated* his purported intention to charge the witness with another count of perjury if he testified in a manner similar to his preliminary hearing testimony. However, the record reveals Harris was present in the courtroom before the chief prosecution witness, Mudryk, was called to the stand. After defense counsel concluded his cross-examination of Mudryk, the court took a short recess. Upon conclusion of the recess, defense counsel called the first defense witness, Harris, to the stand. Only then did the prosecutor make his remarks concerning the perjury charge against Harris.

[4]The following dialogue is found in the preliminary hearing transcript: "MR. WITT: Q. First of all, is Lynn James Harris your true name? [¶] A. Yes. [¶] Q. Before I start asking you questions, Mr. Harris, you understand what perjury is? [¶] A. Yes. [¶] Q. In other words, perjury is a felony and punishable by imprisonment in the state penitentiary. [¶] A. Yes, sir."

■ Respondent's contention that the prosecutor was merely reminding the court of its duty to inform the witness of his Fifth Amendment privilege not to testify is factually unacceptable.

"Even if the prosecutor's motives were impeccable . . . the implication of what he said was calculated to transform [the witness] from a willing witness to one who would refuse to testify, and that in fact was the result." (*United States* v. *Smith* (D.C.Cir. 1973) 478 F.2d 976, 979; see *Bellizzi* v. *Superior Court* (1974) 12 Cal.3d 33, 36-37 [115 Cal.Rptr. 52, 524 P.2d 148].) Moreover, if the prosecutor's only purpose was to ensure that the court advise Harris of his rights, the matter could have been discussed with the court out of the presence of the witness so admonitions could be presented to the witness, by the court, "without any threats or implication of retaliation." (*Id.*, at p. 979.)

■ The prosecutor's statements were intimidating; Harris was willing and prepared to testify in court in appellant's behalf and therefore was called to the witness stand. The prosecutor threatened Harris with perjury and reminded him of the pending charges. Only after the prosecutor's statements were made did Harris refuse to testify. Appellant need not establish that the prosecutor's remarks were either the direct or exclusive factor in the witness' decision not to testify; all that need be shown is a strong suggestion the comments were the cause. (*Berg* v. *Morris* (E.D.Cal. 1980) 483 F.Supp. 179, 184, citing *Webb* v. *Texas* (1972) 409 U.S. 95, 97 [34 L.Ed.2d 330, 333, 93 S.Ct. 351].) However, this record strongly suggests Harris was influenced not to testify by the prosecutor's continued references to the perjury charge against him.

■ The United States Supreme Court in *Washington* v. *Texas* (1967) 388 U.S. 14 [18 L.Ed.2d 1019, 87 S.Ct. 1920], recognized the Sixth Amendment right to have compulsory process for obtaining witnesses in one's favor as one of the most basic ingredients of due process of law. (*Id.*, at p. 18 [18 L.Ed.2d at pp. 1022-1023].) As the Supreme Court explained: "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." (*Id.*, at p. 19 [18 L.Ed.2d at p. 1023]; see also *Chambers* v. *Mississippi* (1973) 410 U.S. 284, 302 [35 L.Ed.2d 297, 312, 93 S.Ct. 1038]; ("Few rights are

more fundamental than that of an accused to present witnesses in his own defense.").)

■ This basic right is violated whenever governmental conduct, whether by state statute (*Washington* v. *Texas, supra*), judicial misconduct (*Webb* v. *Texas, supra,* 409 U.S. 95), or prosecutorial misconduct (see, e.g., *United States* v. *Morrison* (3d Cir. 1976) 535 F.2d 223), interferes with the right of the accused to present testimony of the witnesses.

In *Webb* v. *Texas, supra,* 409 U.S. 95, the United States Supreme Court held that a trial court's lengthy warning to the defendant's only witness to refrain from lying, coupled with threats of dire results if the witness did lie, effectively discouraged the witness from testifying and deprived defendant of due process of law by prohibiting him from presenting witnesses in his own defense. In that case, the trial judge admonished the only defense witness, a man with a criminal record:

" 'Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you.

" 'If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [*sic*] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking.' " (*Id.,* at pp. 95-96 [34 L.Ed.2d at p. 332].)

The court in the *Webb* case, *supra,* 409 U.S. 95 stated that the "unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify. . . ." (*Id.,* at p. 98 [34 L.Ed.2d at

p. 333].) The court concluded defendant was thus deprived of due process of law under the Fourteenth Amendment. ■ ■■■ The trial court's implication that it "expected" the witness to lie went far beyond those inquiries necessary to determine the competency of a witness to testify and to warn the witness of the right not to testify. (*Id.*, at p. 97 [34 L.Ed.2d at p. 97].)[5] ■ ■■■ The court in reversing did not discuss prejudice.[6]

■ The constitutional right of a criminal defendant to call witnesses in his defense mandates "they be free to testify without fear of government retaliation." (*United States* v. *Blackwell* (D.C. Cir. 1982) 694 F.2d 1325, 1334.) ■ It is not improper for a trial court judge or prosecuting attorney to advise prospective witnesses of the consequences of perjured testimony, but the admonitions must not be emphasized to the point of threatening or intimidating the witness into a posture of refusing to testify. (*Ibid.*) One court has said that to show error, "[t]he admonition needs to be threatening and employ coercive language indicating the court's [or prosecuting

---

[5] It is not the court nor the prosecuting attorney's function to attempt to purge the court of a witness who might possibly offer perjured testimony. The *Webb* court, quoting *United States* v. *Winter* (2d Cir. 1965) 348 F.2d 204, 210, stated: " 'Once a witness swears to give truthful answers, there is no requirement to "warn him not to commit perjury or, conversely to direct him to tell the truth." It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.' " (*Webb* v. *Texas, supra,* 409 U.S. 95, 97, fn. * [34 L.Ed.2d 330, 333].) Thus, the believability of the witness' testimony goes to its weight, not its admissibility. An important example of the above principles has been the Legislature and the courts' retreat from the traditional common law disqualification of accomplices as witnesses for one another in a criminal action under the guise that such testimony might be perjured. The Supreme Court in *Washington* v. *Texas* recognized that the Sixth Amendment right to compel attendance of witnesses in one's favor outweighed the state's interest in protecting the court from perjured testimony. (*Washington* v. *Texas, supra,* 388 U.S. 14, 21-23 [18 L.Ed.2d 1019, 1024-1025].) Justice Clarke, writing for the court in *Rosen* v. *United States* (1918) 245 U.S. 467, 471 [62 L.Ed. 406, 409, 38 S.Ct. 148], stated: "[T]he disposition of courts and of legislative bodies to remove disabilities from witnesses . . . [has] been going forward . . ., under dominance of the conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury . . . ."

[6] "Analogous cases involving prosecutorial intimidation of witnesses follow the *Webb* holding. Thus, threats of criminal prosecution (*United States* v. *Morrison, supra,* 535 F.2d 223), or merely telling a defense witness that he would have 'nothing but trouble' if he testified (*United States* v. *Hammond* (5th Cir. 1979) 598 F.2d 1008, 1012), have supported findings of witness coercion in violation of the due process clause." (*Berg* v. *Morris, supra,* 483 F.Supp. 179, 183; see also *United States* v. *MacCloskey* (4th Cir. 1982) 682 F.2d 468 (U.S. Attorney telephoned defendant's girlfriend's attorney to advise him to remind his client if she testified at trial she could be reindicted on dropped charges); *United States* v. *Henricksen* (5th Cir. 1977) 564 F.2d 197 (defense witness intimidated by terms of his plea bargain in another case); *United States* v. *Smith, supra,* 478 F.2d 976 (defense witness told by prosecutor if he testified as indicated by other testimony, he could or would be prosecuted for carrying a concealed weapon, obstructing justice, and as accessory to murder); *Berg* v. *Morris, supra,* (trial court coerced witness into giving inculpatory evidence by twice warning him his probation would be revoked and perjury charges filed if the truth were not told).

attorney's] expectation of perjury." (*United States* v. *Harlin* (9th Cir. 1976) 539 F.2d 679, 681, cert. den., *Harlin* v. *United States* (1976) 429 U.S. 942 [50 L.Ed.2d 313, 97 S.Ct. 362]; see also *Berg* v. *Morris, supra,* 483 F.Supp. 179, 183.)

██ The record indicates the language used by the prosecutor here was not only threatening and coercive but, "effectively drove [the] witness off the stand." (*Webb* v. *Texas, supra,* 409 U.S. 95, 98 [34 L.Ed.2d 330, 333].) Because the witness thereafter refused to testify, the threat created an implied admission of guilt of perjury whether or not it was an actual admission, thus further damaging appellant's interests in receiving a fair trial by the court.

We note the court in *People* v. *Robinson* (1983) 144 Cal.App.3d 962, 971 [193 Cal.Rptr. 92], found an "improper intimidation of a defense witness, regardless of the propriety of the prosecutor's motives," but interpreted the Supreme Court's message in *United States* v. *Valenzuela-Bernal* (1982) 458 U.S. 858 [73 L.Ed.2d 1193, 102 S.Ct. 3440] to be that *reversal* in such a case is appropriate only if it appears the failure of such a defense witness to testify may have affected the outcome of appellant's trial. Our reading of the *Valenzuela-Bernal* opinion prompts us to conclude Justice Rehnquist really stated that because the respondent-defendant in that case made no effort to explain what *material,* favorable evidence the deported passengers would have provided for his defense, he *failed to establish a violation* of the Fifth or Sixth Amendments.[7] We note that in the *Valenzuela-Bernal* case, *Webb* v. *Texas* was not overruled, or even discussed.

In *Cordova* v. *Superior Court* (1983) 148 Cal.App.3d 177, 183 [195 Cal.Rptr. 758], we concluded that the California test of materiality enunciated in the *Mejia* case (*People* v. *Mejia, supra,* 57 Cal.App.3d 574, 580) was not changed by the holding in *Valenzuela-Bernal,* saying it was unclear whether the California rule was based upon the federal (14th Amend., U.S. Const.) or the state (Cal. Const., art. I, § 7) due process clause, and noting that California may dispose of the issue upon independent state grounds. (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 549-550 [119 Cal.Rptr. 315, 531 P.2d 1099]; *Cordova* v. *Superior Court, supra,* at p. 183.) In *Cordova* we held that the witnesses, who were unavailable for defendant's trial because they had been deported, were material witnesses; the case was reversed without discussion of prejudice.

---

[7]Valenzuela-Bernal was charged with transportation of an illegal alien, in violation of immigration laws; two other persons, also illegal aliens, who were passengers in the car with the accused and the transported alien, were deported before the accused had the opportunity to interview them.

In *Berg* v. *Morris, supra,* 483 F.Supp. 179, 186, the court noted several federal courts which followed *Webb* v. *Texas, supra,* 409 U.S. 95, 97 [34 L.Ed.2d 330, 333], held that intimidation of a defense witness is reversible per se. *(United States* v. *Hammond* (5th Cir. 1979) 598 F.2d 1008, 1013; *United States* v. *Morrison, supra,* 535 F.2d 223, 228; *United States* v. *Thomas* (6th Cir. 1973) 488 F.2d 334, 336; *Bray* v. *Peyton* (4th Cir. 1970) 429 F.2d 500, 501.) Other courts, without considering the question, used a harmless error analysis and found the coercion prejudicial. *(United States* v. *MacCloskey, supra,* 682 F.2d 468, 479.)

 We hold that "the constitutional rights involved in the present case are 'so basic to a fair trial that their infraction can never be treated as harmless error. . . .' *(Chapman, supra,* [386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065)] at 23 . . . ." *(Berg* v. *Morris, supra,* 483 F.Supp. 179, 186.) Therefore, "reversal is required without an examination of prejudice." *(Ibid.)*

The loss of Harris' testimony was a violation of appellant's due process rights under the Fourteenth Amendment. Appellant had the right to present "live witnesses" at his trial. Respondent's argument that the preliminary hearing transcript could have been introduced because Harris became an unavailable witness offers an insufficient substitute for the proper presentation of appellant's defense. Here, the prosecutor's coercive statements interfered with the integrity of the court's truth-finding process. *(Washington* v. *Texas, supra,* 388 U.S. 14, 19 [18 L.Ed.2d 1019, 1023].) Appellant's Sixth Amendment right to compulsory process to obtain witnesses in his favor was violated by prosecutorial threat.

Under the circumstances, Harris was a material witness prevented from testifying by coercive action of the state. "If . . . state action has made a material witness unavailable, [reversal] is mandated by due process and [appellant's] constitutional right to a fair trial." *(People* v. *Mejia, supra,* 57 Cal.App.3d 574, 579; see *Cordova* v. *Superior Court, supra,* 148 Cal.App.3d 177, 183, and cases cited therein concerning independent state grounds.)

III*

. . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante,* page 582.

The order revoking probation is reversed. However, the trial court is directed to ensure that the record reflect appellant is entitled to credit for 20 days—13 days for time served, and 7 days good time/work time.

Zenovich, Acting P. J., and Andreen, J., concurred.

A petition for a rehearing was denied July 9, 1984.