[No. F002575. Fifth Dist. Oct. 20, 1983.]

ROBERT CORDOVA, Petitioner v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Gerald F. Sevier, Public Defender, Neal Pereira, Assistant Public Defender, and Nick J. Zuvela, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Robert D. Marshall, Christine M. Diemer and Robert Jibson, Deputy Attorneys General, for Real Party in Interest.

OPINION

BROWN (G. A.), P. J.—Petitioner is charged by information with violating Health and Safety Code sections 11351 (possession for sale of heroin), 11365 (being in a place where heroin is being used—misdemeanor) and 11364 (possession of a controlled substance—misdemeanor).

Petitioner's motion to dismiss was denied by the trial court. He seeks relief here by way of mandate. We issued an order to show cause. ■ After oral argument, we have concluded that the case is controlled by *People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192] and will issue a writ directing dismissal.

FACTS

On March 17, 1983, petitioner and six others, two local citizens and four illegal aliens, were arrested in a residence. All were charged with various drug counts. Jail records of three of the four aliens noted that they were illegal aliens. The jail placed border patrol holds on the four.

All defendants were arraigned on March 21, 1983. Separate counsel were appointed for the petitioner herein and the other defendants.

On April 13, 1983, at about 4 p.m., 27 days after the initial arrest, petitioner's counsel appeared in court at a "pre-preliminary hearing" conference for petitioner. Sometime between 4 p.m. and 5:30 p.m., while at his office, petitioner's counsel overheard a conversation indicating that the prosecutor had dismissed all charges against the four illegal aliens. In fact, the charges were dismissed sometime between 4 and 5:30 p.m. on April 13. The charges against the four illegal aliens had been reduced to misdemeanors. The reason for the dismissals was that the prosecutor learned that the

trial court intended to sentence them to 30 days in jail if convicted and they already had been in custody for 27 days.

The next day, April 14, 1983, at approximately 10 a.m., the four illegal aliens were delivered to federal immigration officials, who deported them that day. The prosecutor had taken no action to notify petitioner or his counsel before the dismissals.

Petitioner's attorney called the prosecutor between 9 and 10 a.m. on April 14 and told the prosecutor he intended to file a "*Mejia*" motion. At about 10 a.m. he called the sheriff's office and was advised the four had been turned over to federal immigration authorities for deportation.

At no time between the initial arrest and the time that the dismissals occurred did petitioner's attorney attempt to interview any of the six persons or contact their attorneys, nor did he notify the sheriff's or prosecutor's office that the four witnesses should not be released for deportation.

## DISCUSSION

In *People* v. *Mejia, supra,* 57 Cal.App.3d 574, the defendant was arrested along with six other persons in a residence in which a large quantity of marijuana and $4,000 in currency were found. (*Id.,* at p. 578.) Two of the persons arrested were Mexican nationals, who were not prosecuted and were ". . . turned over to the United States Immigration Service for deportation almost immediately after their arrests." (*Ibid.*) Several months after his arrest, the defendant obtained a court order compelling the prosecution to produce the two Mexican nationals as material witnesses, and when the witnesses could not be found, the case was dismissed. (*Id.,* at pp. 577, 579.) The People appealed. (*Id.,* at p. 577.)

The appellate court affirmed, holding that in dropping the charges against the illegal alien witnesses and making them available for deportation without notifying the defendant, the state had made material witnesses unavailable to the defendant, stating: "If . . . state action has made a material witness unavailable, dismissal is mandated by due process and a defendant's constitutional right to a fair trial. . . . 'The fundamental due process principle . . . is that the prosecution may not deprive an accused of the *opportunity* to present material evidence which might prove his innocence. . . .'" (*Id.,* at p. 579, quoting from *Bellizzi* v. *Superior Court* (1974) 12 Cal.3d 33, 36 [115 Cal.Rptr. 52, 524 P.2d 148].)

The court held that the deported Mexicans were shown to be material witnesses under the test applied in disclosure of informant situations, stat-

ing: "When the evidence discloses the person unavailable either participated in the crime charged, or was a nonparticipating eyewitness to the offense, in a position to perceive what took place from a sufficiently proximate vantage point, such person is a material witness, and the defendant has demonstrated a reasonable possibility he could, if available, give evidence which would exonerate him (*Williams* v. *Superior Court* [(1974)] 38 Cal.App.3d 412, 423-424 [112 Cal.Rptr. 485])." (*People* v. *Mejia, supra,* 57 Cal.App.3d 574, 580; see also *People* v. *Goliday* (1973) 8 Cal.3d 771, 778-779 [106 Cal.Rptr. 113, 505 P.2d 537]; *People* v. *Garcia* (1967) 67 Cal.2d 830, 837 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Perez* (1965) 62 Cal.2d 769, 773-774 [44 Cal.Rptr. 326, 401 P.2d 934].) The *Mejia* court specifically held that there need be "[n]o showing that their potential testimony would exonerate Mejia" or what the specific testimony of the missing witnesses might be. (*Id.,* at pp. 580-581.)

 Real party in interest contends that the test of materiality enunciated in *Mejia* has been changed by the recent Supreme Court of the United States case of *United States* v. *Valenzuela-Bernal* (1982) 458 U.S. 858, 873 [73 L.Ed.2d 1193, 1206-1207, 102 S.Ct. 3440, 3449].

*Valenzuela-Bernal* redefined for the federal courts the tests of materiality so as to place a heavier burden upon a defendant asserting that he was deprived of a fair trial because a material witness was made unavailable through prosecutorial action or inaction. The case involved a prosecution under federal law for transporting illegal aliens. An illegal alien witness, who was being transported by defendant, was deported without notice to the defendant. On appeal from his conviction, the Supreme Court redefined the showing of materiality necessary to establish a violation of the defendant's rights: "[T]he responsibility of the Executive Branch faithfully to execute the immigration policy adopted by Congress justifies the prompt deportation of illegal-alien witnesses upon the Executive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution. The mere fact that the Government deports such witnesses is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment. A violation of these provisions requires some showing that the evidence lost would be both material and favorable to the defense.

"Because prompt deportation deprives the defendant of an opportunity to interview the witnesses to determine precisely what favorable evidence they possess, however, the defendant cannot be expected to render a detailed description of their lost testimony. But this does not . . . relieve the defendant of the duty to make some showing of materiality. Sanctions may be imposed on the Government for deporting witnesses only if the criminal

defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses. . . . [¶] . . . [S]anctions will be warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact. . . . Because determinations of materiality are often best made in light of all of the evidence adduced at trial, judges may wish to defer ruling on motions until after the presentation of evidence." (*Id.*, at pp. 873-874 [73 L.Ed.2d at pp. 1206-1207, 102 S.Ct. at pp. 3449-3450]; fn. omitted.)

The question is whether this statement operates to change the California rule.[1] We think not.

Real party in interest argues that the rule articulated in *Mejia*, 57 Cal.App.3d at page 580, was based upon federal law, and therefore when the United States Supreme Court changed the federal rule in *Valenzuela-Bernal* the California rule likewise changed.

While the early California cases stating the test of witness materiality in informer cases did cite federal cases (see *People* v. *McShann* (1958) 50 Cal.2d 802, 806-809 [330 P.2d 33]; *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Durazo* (1959) 52 Cal.2d 354, 356 [340 P.2d 594]; *People* v. *Williams* (1958) 51 Cal.2d 355, 357-360 [333 P.2d 19]; and *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 816-819 [330 P.2d 39]), California cases and other authority are also cited. In fact, it is unclear whether the California rule is based upon the federal (14th Amend., U.S. Const.) or the state (art. I, § 7, Cal. Const.) due process clause. It is clear, however, that California has the right to dispose of the issue upon independent state grounds, the California Constitution being "a document of independent force." (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 549-550 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Pettingill* (1978) 21 Cal.3d 231, 247-248 [145 Cal.Rptr. 861, 578 P.2d 108]; *People* v. *Disbrow* (1976) 16 Cal.3d 101, 114-115 [127 Cal.Rptr. 360, 545 P.2d 272].) Accordingly, it does not necessarily follow that, because the federal rule changed, the California rule must change.

Whatever its origin, the California rule of materiality, as it relates to informer witnesses, has been thoroughly imbedded in California law for a substantial period of time. It has been applied, interpreted and reinterpreted in light of numerous factual situations in hundreds, if not thousands, of cases in the trial and appellate courts of this state. It continues to be applied in

---

[1]No one contends that Proposition 8 requires California to follow the federal rule.

paid informer cases (*Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851 [83 Cal.Rptr. 586, 464 P.2d 42]; *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 419-421 [112 Cal.Rptr. 485]) and to informers who are not police agents (*People* v. *Goliday, supra,* 8 Cal.3d 771, 778-779). By analogy, the same test of materiality has been applied to the preservation and production of demonstrative evidence, such as a breathalyzer test ampoule (*People* v. *Hitch* (1974) 12 Cal.3d 641, 648-650 [117 Cal.Rptr. 9, 527 P.2d 361]) and to semen samples (*People* v. *Nation* (1980) 26 Cal.3d 169, 176-177 [161 Cal.Rptr. 299, 604 P.2d 1051]; *People* v. *Newsome* (1982) 136 Cal.App.3d 992, 1002-1003 [186 Cal.Rptr. 676]), among others. As has been pointed out, *Mejia, supra,* 57 Cal.App.3d 574, applied the same test of materiality to alien eyewitnesses. In light of the consistent and widespread use of this test of materiality and the extensive reliance on it in California, in the interests of certainty, stability, predictability and consistency in the law, it would be unwise to change the rule at this juncture. It has, in effect and in practice, become a California doctrine of independent existence.

The California cases have recognized the impossible task with which a defendant would be faced if, in order to require a disclosure of a witness' identity, the defendant is required to show what the witness would testify to and that he would give favorable testimony. Thus, in *Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 170 [74 Cal.Rptr. 233, 449 P.2d 169], the Supreme Court observed: "Finally, the Attorney General asserts that the privilege of nondisclosure would be devoid of all meaning '[i]f a mere assertion of materiality, in the absence of facts showing materiality, were the only requirement for disclosure . . . .' We need only briefly point out that by the very nature of the problem here confronting defendants it is impossible for them to state *facts* which would show the materiality of the informant's testimony. Since they do not know his identity they cannot possibly state factually what he will say if he is required to testify. All that defendants are required to do is to demonstrate 'a reasonable possibility that the anonymous informant . . . could give evidence on the issue of guilt which might result in [their] exoneration.' (*People* v. *Garcia* [1967] 67 Cal.2d 830, 840.)" (See also *People* v. *Hitch, supra,* 12 Cal.3d 641, 648-649; *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721].) As in the case of an informer, a defendant cannot expect to make a showing of what the deported witness would testify to when the defendant has had no reasonable opportunity to interview the witness and the witness has been made unavailable by action of the prosecutor.

Real party argues the federal rule enunciated in *Valenzuela-Bernal* requires something short of a showing of what the missing witness would literally testify to. Real party asserts that the case merely imposes a require-

ment that the defendant set forth what he believes the witness would say in aid of defendant's defense. If this assertion is true, the rule encourages undesirable speculation. Moreover, the rule could well encourage a defendant to fabricate what the witness would have said if available. Further, insofar as the test suggests that the defendant reveal his defenses and how the witness' testimony may relate to those defenses, there could well be a lightening of the prosecutor's burden of proof and a likely impingement upon defendant's right to remain silent and not disclose his defenses in advance of putting on his case at trial, thus implicating Fifth Amendment values. ■ See *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 325 [85 Cal.Rptr. 129, 466 P.2d 673], "'". . . Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against the accused out of his own mouth." [Citation.] The People must "shoulder the entire load" of their burden of proof in their case in chief, without assistance either from the defendant's silence or from his compelled testimony. [Citations].'" and *People* v. *Collie* (1981) 30 Cal.3d 43, 50, 55-56 [177 Cal.Rptr. 458, 634 P.2d 534], in which, consonant with the above principles, the Supreme Court disapproved of all judicial attempts to frame prosecutorial discovery orders.

■ We conclude that the California rule of materiality has not been changed by the United States Supreme Court's decision in *Valenzuela-Bernal*. ■ Accordingly, the showing of materiality of the four alien witnesses in this case was sufficient.

The thrust of real party in interest's second argument is that it is only where state action[2] makes a material witness unavailable to the defense that dismissal is mandated by due process and defendant's constitutional right to a fair trial. (*Mejia, supra,* 57 Cal.App.3d at pp. 579, 582.) The obligation of the People is to assure the preservation of the evidence and the *opportunity* for the defense to obtain the evidence.

Unlike *Mejia,* the alien witnesses in the case at bench were in custody for 27 days before they were deported. Except for one of the aliens, the jail's records and the arrest records which were available to petitioner revealed they were aliens. Yet petitioner made no effort to contact the aliens' counsel or to interview them. Thus, it is argued by real party in interest that the unavailability of the witnesses was due to petitioner's inaction and not to dismissing the charges and turning the four witnesses over to the federal immigration authorities knowing they would be deported.

---

[2]*Mejia* held that the material witness had been unavailable through state action even though the act of deportation was accomplished by the federal authorities (*People* v. *Mejia, supra,* 57 Cal.App.3d at p. 582). That holding is not challenged here.

The weakness of this argument is that it does not recognize the practicalities of the situation. Counsel for the alien witnesses certainly would not have permitted them to be interviewed prior to the dismissal of the charges. Thus, until the charges against the aliens were dismissed, they were not in any realistic sense available to petitioner for interview. The efficient cause of their unavailability was the acts of dismissing the charges and turning the witnesses over to the immigration authorities, not the 27-day delay.[3]

In *In re Jesus B.* (1977) 75 Cal.App.3d 444 [142 Cal.Rptr. 197], the alien was a victim witness, not an accused. In that case the prosecutor had taken several steps to assure the presence of the witness for trial. Notwithstanding those efforts, when the witness was released from state custody he was not heard from again. In concluding that the defendant was not entitled to a dismissal because of the disappearance of the alien-victim-witness, we stated: "However, the police action must be judged in the light of what was reasonable under the circumstances then appearing, which included knowledge by the police that Rangel was a victim and not an accused. The police could reasonably have believed that it would be unlikely that he would have given favorable testimony on behalf of the appellant or that the appellant would want him as a witness." (At p. 451.) ■ We further noted that it would have been better if the prosecutor had given notice to the defendant of the victim's release. (*Ibid.*) We adhere to these observations.

It would not be imposing a significant burden upon the prosecution to require the prosecutor to give reasonable notice to defense counsel of the impending release from jail of a material alien witness in order that defense counsel could take such action as he may deem necessary to interview the witness and make him or his testimony available for trial. While we do not impose such a requirement in every case, such a notice would certainly satisfy the prosecutor's obligation to take whatever reasonable steps that may be required to assure that the defendant is not deprived of the opportunity to make the witness available for trial. (See *People* v. *Mejia, supra,* 57 Cal.App.3d 574, 582.) Because the giving of such a notice would impose only a minor inconvenience upon the prosecutor and would eliminate controversy such as has arisen in this case, we commend such practice to prosecutors. By these guidelines we do not intend to entirely relieve a defendant of some duty of diligence to make a known alien witness available for trial.

---

[3]*People* v. *Newsome, supra,* 136 Cal.App.3d 992, relied upon by real party in interest, is inapposite. There, a semen sample in a rape prosecution was preserved by the prosecutor for about six months and then allowed to deteriorate. The defense had been timely notified of the existence and availability of the specimen for testing. The defendant took no action to conduct tests. The court held that the unavailability of the sample due to passage of time could not be attributed to the prosecution. There, the specimen in fact was available to the defendant for testing, and the unavailability was due to the passage of time, not to an affirmative act of destruction by the prosecution.

Under other facts, that duty may well serve to qualify the People's burden in this regard.

 Clearly, in the present case the prosecutor took no steps whatever to assure the availability of the alien witnesses to the defendant before he affirmatively dismissed the cases against the aliens, knowing they would be deported immediately thereafter. Accordingly, we hold that the trial court should have granted a dismissal of the action against petitioner.

Since we hold that petitioner is entitled to a dismissal upon this ground, we do not reach the other issue raised.

Let a writ of mandate issue directing the Superior Court of Tulare County to set aside its order denying petitioner's motion to dismiss and to enter an order granting said motion.

Andreen, J., and Woolpert, J., concurred.