[No. A016358. First Dist., Div. Four. Oct. 31, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT WALTER TROMBETTA, Defendant and Appellant.

[No. A016374. First Dist., Div. Four. Oct. 31, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL GENE COX et al., Defendants and Appellants.

[No. A017265. First Dist., Div. Four. Oct. 31, 1985.]

In re GREGORY MOLLER WARD on Habeas Corpus.

[No. A017266. First Dist., Div. Four. Oct. 31, 1985.]

In re GALE BERNELL BERRY on Habeas Corpus.

**COUNSEL**

John F. DeMeo and Thomas R. Kenney for Defendants and Appellants.

J. Frederick Haley and John A. Pettis for Petitioners.

Ed Kuwatch, James R. Jenner, Public Defender (Alameda), Scott A. Sugarman, Assistant Public Defender, Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff, William Thornbury and Albert J. Menaster, Deputy Public Defenders, as Amici Curiae on behalf of Defendants and Appellants and Petitioners.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POCHÉ, J.**—In this case we are asked to decide whether the *Hitch*[1] duty to preserve breath samples is based upon the federal or the state Constitution. As will appear, we conclude that the *Hitch* rule rests on the federal Constitution. We also conclude that there is no constitutional impediment to the introduction into evidence of intoxilyzer breath test results.

### BACKGROUND

Defendants were charged in municipal court with misdemeanor driving under the influence of intoxicating liquor. (Former Veh. Code, §§ 23101, subd. (a) or 23102, subd. (a); see now Veh. Code, §§ 23153, subd. (a), or 23152, subd. (a).) Their common law motions to suppress the evidence obtained from an intoxilyzer breath test were denied. In the *Trombetta* and *Cox* cases, the defendants appealed the order denying suppression to the superior court, which affirmed the order and then certified the cases for transfer to this court. In the *Ward* and *Berry* cases the defendants appealed their judgments of conviction to the superior court. The superior court affirmed and denied transfer to this court. On defendants' petitions to the California Supreme Court for writs of habeas corpus, that court issued orders to show cause before this court why relief should not be granted.

This court held that the taking of a breath sample for testing by the intoxilyzer is the collecting of material evidence within the rationale of *Hitch,* and that pursuant to *Hitch,* federal due process requires that when the state collects such breath evidence, law enforcement agencies must establish and follow rigorous and systematic procedures to preserve the captured evidence or its equivalent for the use of the defendant.[2] (*People* v. *Trombetta* (1983) 142 Cal.App.3d 138, 143-145 [190 Cal.Rptr. 319], revd. *sub nom., California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528].)

On petition by the state, the United States Supreme Court granted certiorari, and held that "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. [Fn.] To meet this standard of constitutional materiality . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain

---

[1]*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].

[2]Unlike the breathalyzer used in *Hitch,* the intoxilyzer exhausts the captured breath specimen in testing it; hence, the court's holding would require police at the time of the test to collect and retain an additional specimen in kits available for that purpose. (See *People* v. *Trombetta, supra,* 142 Cal.App.3d at pp. 141-142.)

comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case."[3] (*California* v. *Trombetta, supra,* 467 U.S. at p. 489, fn. omitted [81 L.Ed.2d at p. 422, 104 S.Ct. at p. 2534].) Concluding, the court stated: "[T]he Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial."[4] (At p. 491 [81 L.Ed.2d at p. 423, 104 S.Ct. at p. 2535].) The court reversed and remanded the cases to this court for further proceedings not inconsistent with its opinion. (*Ibid.*)

Our previous opinion assumed that the *Hitch* rule requiring the preservation of breath samples implemented a federal due process standard. (*People* v. *Trombetta, supra,* 142 Cal.App.3d at p. 143.) In light of the United States Supreme Court's decision to the contrary, the question now presented is to what extent, if any, does the *Hitch* rule rest on the due process clause of the California Constitution (art. I, § 7).

DISCUSSION

I. *Due Process*

 In *Hitch* the California Supreme Court held for the first time that there is a due process duty to preserve and disclose the component parts of a breathalyzer test (i.e., the test ampoule, its contents, and the reference ampoule), and that where such evidence cannot be disclosed because of its intentional but nonmalicious destruction, suppression of the test results is required unless the prosecution can show that the investigative officials have established and enforced rigorous and systematic procedures for the preservation of the evidence. (*Id.,* 12 Cal.3d at pp. 652-653.)

The *Hitch* opinion makes no specific reference to either the state or the federal Constitution. As its point of departure, however, the opinion cites *Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194], and *Giglio* v. *United States* (1971) 405 U.S. 150, 153-154 [31 L.Ed.2d 104, 108, 92 S.Ct. 763], for the "settled rule" that "the intentional

---

[3]The court found that the proven accuracy of the intoxilyzer and the California testing procedures made the chances "extremely low" that preserved samples would have been exculpatory (*California* v. *Trombetta, supra,* 467 U.S. at p. 479 [81 L.Ed.2d at p. 422, 104 S.Ct. at p. 2534]), and that there were alternate methods for impeaching the test results (*id.,* at p. 490 [81 L.Ed.2d at p. 423, 104 S.Ct. at p. 2535]).

[4]In footnote number 12 at this point, the United States Supreme Court stated: "State courts and legislatures, of course, remain free to adopt more rigorous safeguards governing the admissibility of scientific evidence than those imposed by the Federal Constitution. [Citations.]" (*California* v. *Trombetta, supra,* at p. 491 [81 L.Ed.2d at pp. 423-424, 104 S.Ct. at p. 2535].)

suppression of material evidence favorable to a defendant who has requested it constitutes a violation of due process, . . ." (*People* v. *Hitch, supra,* 12 Cal.3d at pp. 645-646.)[5] Thereafter, in determining that evidence "substantially affecting" the credibility of the breathalyzer test results would be material (*id.,* at p. 647), in imposing on investigative agencies a duty of regular procedures for the preservation of such evidence (*id.,* at pp. 650-652), and in fashioning sanctions for breach of that duty (*id.,* at pp. 654-655), the opinion repeatedly cites federal decisional law for authority. Most significantly, as authority for the *sine qua non* of *Hitch*—that before discovery of material evidence is requested the duty of disclosure is operative as a duty of preservation—the opinion cites the federal case of *United States* v. *Bryant* (D.C. Cir. 1971) 439 F.2d 642, 650-651 (*People* v. *Hitch, supra,* 12 Cal.3d at p. 650), which in turn relies on *Brady* v. *Maryland, supra,* 373 U.S. 83.

Only in fashioning a standard for determining when nonpreserved breathalyzer components should be deemed to have been exculpatory, for purposes of deciding a defendant's claim for relief, did the *Hitch* court, lacking any federal precedent to guide it, turn by analogy to the materiality standard articulated in the California witness-informer cases. (*People* v. *Hitch, supra,* 12 Cal.3d at pp. 648-649.) In so doing, we believe, the court was not invoking the state Constitution independently in support of the underlying duty to preserve the evidence, but rather, in the absence of any relevant federal precedent, was applying what it believed the proper standard to be.[6] Support for this conclusion is found in our Supreme Court's recent decision in *In re Michael L.* (1985) 39 Cal.3d 81 [216 Cal.Rptr. 140, 702 P.2d 222]. Although the court in *Michael L.* found it unnecessary to reach the question "whether *Hitch* has 'survived' *Trombetta,*" the court explained that "[i]n *Hitch,* we held that the *federal* guaranty of due process requires the People to preserve breathalyzer ampoules in their possession . . . ." (*In re Michael L., supra,* at pp. 85-86; original italics omitted, italics added.)

Notwithstanding *Hitch*'s apparent federal origins, amici curiae, citing *Cordova* v. *Superior Court* (1983) 148 Cal.App.3d 177 [195 Cal.Rptr. 758], argue that the California definition of materiality is now imbedded in state law and has become a doctrine of independent force.

---

[5]*In re Ferguson* (1971) 5 Cal.3d 525, 532 [96 Cal.Rptr. 594, 487 P.2d 1234], also cited by the *Hitch* court (*id.,* 12 Cal.3d at p. 646), and the California authorities cited in *Ferguson,* also rely on federal authorities.

[6]The California informer-witness cases, we observe, are founded on both federal and state law. (See, e.g., *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Durazo* (1959) 52 Cal.2d 354, 356 [340 P.2d 594, 76 A.L.R.2d 257]; *People* v. *Williams* (1958) 51 Cal.2d 355, 357-359 [333 P.2d 19]; *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 816-818 [330 P.2d 39]; *People* v. *McShann* (1958) 50 Cal.2d 802, 806-810 [330 P.2d 33].)

In *Cordova* the question was whether the United States Supreme Court's decision in *United States* v. *Valenzuela-Bernal* (1982) 458 U.S. 858 [73 L.Ed.2d 1193, 102 S.Ct. 3440], narrowing the test of materiality for a deported witness, operated to change the California rule of witness materiality set forth in *People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192]. (*Cordova* v. *Superior Court, supra,* 148 Cal.App.3d at pp. 182-183.) Observing that it was unclear from the early cases whether the California rule is based on the federal or the state due process clause, the Court of Appeal in *Cordova* explained that "Whatever its origin, the California rule of materiality, as it relates to informer witnesses, has been thoroughly imbedded in California law . . . [and] has, in effect and in practice, become a California doctrine of independent existence." (*Id.,* at pp. 183-184.)

The *Cordova* analysis, by its terms applicable only to witness cases—cases whose origins expressly rest in both state and federal law (see fn. 6, *ante*)—is not dispositive of the issue here, i.e., whether the California Constitution dictates application of the informer-witness standard of materiality to nonpreserved breath-test components and specimens.

As indicated, we find that *Hitch* was premised on federal due process, and that the informer-witness standard of materiality was adopted in the absence of pertinent federal authority. We conclude, therefore, that unless and until our Supreme Court holds otherwise, the appropriate test to apply in determining the materiality of nonpreserved breath-test components and specimens is the federal due process test set forth in *California* v. *Trombetta.* (See *People* v. *Aguilar* (1985) 165 Cal.App.3d 221, 224-225 [211 Cal.Rptr. 333].)

Because, as the United States Supreme Court held, the nonpreserved breath samples in this case were not material evidence, federal due process does not require suppression of the intoxilyzer test results. Consequently, we must now consider the issues left undecided in our first *Trombetta* opinion (see *People* v. *Trombetta, supra,* 142 Cal.App.3d at p. 142), i.e., whether suppression is required by equal protection or by the requirements of informed consent.

## 2. *Equal Protection*

Amici public defenders and defendants (hereafter defendants) assert that if due process does not require exclusion of the intoxilyzer breath test results, then individuals who provide breath samples are denied equal protection of the law by the Department of Health regulations, which require preservation of samples in other kinds of tests (Cal. Admin. Code, tit. 17, §§ 1219.1, subd. (g) [blood samples], 1219.2, subd. (c) [urine samples];

cf. Health & Saf. Code, § 436.64 [ampoules containing breath samples]), but not in intoxilyzer breath tests (see Cal. Admin. Code, tit. 17, § 1219.3).

Respondents and the Attorney General (the Attorney General) argue that defendants misread the regulations. Pursuant to the regulations, the Attorney General argues, the state is under no duty to collect and preserve an additional blood or urine sample for the defendant's use, but is required only to retain any of the original sample that may be left after the state's analyses. (See Cal. Admin. Code, tit. 17, §§ 1219.1, subd. (g)(2), 1219.2, subd. (c)(1).) The absence of a requirement that a breath sample be retained "simply reflects the fact that there is no remaining breath sample left to be retained" after analysis by the intoxilyzer.

We agree with the Attorney General that the regulations do not discriminate against individuals who select a breath test. Whatever test is chosen, whether blood, urine, or breath, the regulations require collection of only such amount of body sample as is necessary for analysis by the state. (See Cal. Admin. Code, tit. 17, §§ 1219.1, subds. (a), (b), 1219.2, subd. (a), 1219.3.) The difference in the regulations in requiring retention of the remaining sample of blood and urine, while failing to require retention of a breath sample (*id.*, §§ 1219.1, subd. (g), 1219.2, subd. (c), 1219.3), merely reflects the fact that the intoxilyzer breath test exhausts the specimen, whereas tests of blood and urine ordinarily do not.[7] This difference, of itself, is of no constitutional significance.

Defendants, however, impliedly argue that regardless of the import of the regulations, equal protection requires the state to preserve a breath sample so that defendants who submit to an intoxilyzer breath test will have an equal opportunity to retest the evidence against them.

■ The principle of equal protection of the law requires equal treatment of persons similarly situated, not in the abstract, but with reference to a particular protected interest. (See Tribe, American Constitutional Law (1978) § 16-1, pp. 992-993; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 336, p. 3630, § 341, p. 3635.) "Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment. . . . [¶] 'The Fourteenth Amendment enjoins "the equal protection of the laws," and laws are not abstract propositions. They do not relate to abstract units A, B, and C, but are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by

---

[7]The evidence indicates that with blood samples a sufficient sample remains for an independent test approximately 95 percent of the time, and with urine samples, approximately 75 percent of the time.

the use of specific remedies. The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" (*Norvell* v. *Illinois* (1963) 373 U.S. 420, 423-424 [10 L.Ed.2d 456, 459, 83 S.Ct. 1366].) The question presented, therefore, is whether the failure of the state *sua sponte* to preserve a breath sample for defendants who submit to an intoxilyzer breath test impermissibly infringes on a protected interest.[8]

Defendants characterize the interest at stake as the opportunity to have a sample of body substance for independent testing. Although in a limited sense this characterization is correct, in *Hitch* and its progeny, as here, the fundamental interest at stake is the defendant's right to impeach the evidence against him or, stated more broadly, his right to a fair trial. (See *California* v. *Trombetta, supra,* 467 U.S. 479 at pp. 488-489 [81 L.Ed.2d at pp. 421-422, 104 S.Ct. at pp. 2533-2534]; *People* v. *Moore* (1983) 34 Cal.3d 215, 221 [193 Cal.Rptr. 404, 666 P.2d 419]; *People* v. *Nation* (1980) 26 Cal.3d 169, 176 [161 Cal.Rptr. 299, 604 P.2d 1051]; *People* v. *Hitch, supra,* 12 Cal.3d at p. 647.) Consequently, failure to preserve a breath sample for independent testing constitutes a denial of equal protection only if such failure deprives the defendant of an effective opportunity to impeach the test result. In *California* v. *Trombetta,* the United States Supreme Court determined that such was not the case.

In *Trombetta* the court first reviewed the procedures followed to ensure the accuracy of a particular intoxilizer breath test (467 U.S. at pp. 481-482 [81 L.Ed.2d at pp. 417-418, 104 S.Ct. at p. 2530]), and to protect suspects against machine malfunctions (*id.,* at p. 489 [81 L.Ed.2d at p. 422, 104 S.Ct. at p. 2534]). The court then considered the impact on the defense of the state's failure to preserve breath samples for retesting. "Even if one were to assume," the court stated, "that the Intoxilyzer results in this case were inaccurate and that breath samples might therefore have been exculpatory, it does not follow that respondents were without alternative means of demonstrating their innocence. Respondents and *amici* have identified only a limited number of ways in which an Intoxilyzer might malfunction: faulty calibration, extraneous interference with machine measurements, and operator error. . . . Respondents were perfectly capable of raising these issues without resort to preserved breath samples. To protect against faulty calibration, California gives drunk driving defendants the opportunity to inspect the machine used to test their breath as well as that machine's weekly calibration results and the breath samples used in the calibrations. . . .

---

[8]There is no dispute that a defendant always has the right on request and at his own expense to collect a contemporaneous sample with which to challenge prosecution evidence. (Veh. Code, § 13354, subd. (b).)

Respondents could have utilized this data to impeach the machine's reliability. As to improper measurements, the parties have identified only two sources capable of interfering with test results: radio waves and chemicals that appear in the blood of those who are dieting. For defendants whose test results might have been affected by either of these factors, it remains possible to introduce at trial evidence demonstrating that the defendant was dieting at the time of the test or that the test was conducted near a source of radio waves. Finally, as to operator error, the defendant retains the right to cross-examine the law enforcement officer who administered the Intoxilyzer test, and to attempt to raise doubts in the mind of the fact-finder whether the test was properly administered."[9] (*Id.*, p. 490 fn. omitted [81 L.Ed.2d at p. 423, 104 S.Ct. at p. 2535]; see also fn. 3, *ante.*)

The Supreme Court's comments, although made in the context of a due process analysis, are germane as well to the issue of equal protection. Insofar as the record before us shows, the means of impeachment referred to above afford defendants a full and equal opportunity to impeach the intoxilyzer test results. In particular, we find no evidence to compel the conclusion that subsequent testing of a separate, preserved breath sample can effectively impeach the intoxilyzer test results. The briefs, petitions, and letters filed in this court reflect disagreement among the parties concerning the critical issues (1) whether the intoximeter field crimper-indium tube encapsulation kit referred to in our first *Trombetta* opinion (*id.*, 142 Cal.App.3d at p. 142) was or is approved for preservation of breath samples for subsequent independent (or "referee") analysis and, more significantly, (2) whether subsequent testing of a preserved breath sample would yield useful results. Indeed, on this latter point, Kathryn Holmes, Contra Costa County forensic alcohol supervisor, testified that the results of tests made with breath samples preserved by the indium tube device had a scientifically unacceptable 20 percent margin of error.

In these circumstances we are unable to say that equal protection requires the state to preserve a breath sample for independent testing. We conclude, therefore, that just as failure to preserve a breath sample does not deprive defendants of a fair trial (*California* v. *Trombetta, supra,* 467 U.S. at p. 491 [81 L.Ed.2d at p. 423, 104 S.Ct. at p. 2535]), neither does such failure deny defendants equal protection of the law.

---

[9]The Supreme Court's reference to "operator error" notwithstanding, it appears that there is no operator manipulation associated with the intoxilyzer test: the defendant blows directly into the machine and the analysis is performed by the machine itself, with the results indicated on a printout card. Evidently it is for this reason that intoxilyzer tests, unlike blood and urine tests, can be performed by technically untrained officers. (See Cal. Admin. Code, tit. 17, § 1221.1, subd. (b)(1); cf. *People* v. *Moore, supra,* 34 Cal.3d at pp. 219, 221 [where the California Supreme Court recognized that technician error can significantly affect urine test results].)

### 3. *Informed Consent*

■ When defendants agreed to provide a breath sample, they were not advised that the intoxilyzer does not retain any sample for retesting. Defendants argue that failure to so advise them constitutes an independent violation of due process and equal protection.

In *People* v. *Mills* (1985) 164 Cal.App.3d 652 [210 Cal.Rptr. 669], the Court of Appeal for the Second District held that there is no constitutional duty to advise a defendant who chooses a breath test that no sample will be retained.[10] Referring to *California* v. *Trombetta,* the court stated that "the United States Supreme Court has . . . determined that the state does not violate due process when it fails to preserve a sample of breath for independent testing. The results of a breath test are admissible even if the breath sample is destroyed. [Citation.] Therefore, respondent had no constitutional right to a preserved sample which was waived by choosing a breath sample.
■ [¶] 'Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial. [Fn. omitted.]' [Citation.] ■ If preservation of a sample for possible impeachment of results is not necessary to a fair trial as determined in *California* v. *Trombetta, supra,* a knowing waiver of a preserved sample is likewise unnecessary. [¶] The test chosen by appellant . . . has not been shown to be less reliable than the optional tests he did not choose. As pointed out by the Supreme Court, he remains free to impeach the results of the test by other reasonably available means. [Citation.]" (*People* v. *Mills, supra,* 164 Cal.App.3d at pp. 657-658; see also *People* v. *Brannon* (1973) 32 Cal.App.3d 971, 976 [108 Cal.Rptr. 620].)

We find the reasoning of the *Mills* court persuasive and dispositive of the informed consent issue.

### DISPOSITION

The appeals in the *Trombetta* and *Cox* groups of cases were taken from nonappealable orders before judgment and were therefore dismissed when previously before this court. (*People* v. *Trombetta, supra,* 142 Cal.App.3d at p. 145.) However, the United States Supreme Court, acting in the belief that we had exercised jurisdiction over the appeals (*California* v. *Trombetta, supra,* 467 U.S. at 483, fn. 4 [81 L.Ed.2d at p. 418, 104 S.Ct. at p. 2531]),

---

[10]Police officers are now required by statute to advise defendants that breath-testing equipment does not retain any sample of the breath and that no breath sample will be available for independent analysis. (Veh. Code, § 13353.5, subd. (a); added by Stats. 1983, ch. 841, § 1, p. 3017.)

took the cases for review, with the result that on this remand the cases are again before us.

The *Trombetta* and *Cox* groups of appeals (A016358, A016374) are again dismissed. (Pen. Code, § 1466.) In the *Ward* and *Berry* proceedings (A017265, A017266), the petitions for writs of habeas corpus are denied.

Anderson, P. J., and Channell, J., concurred.

The petition of appellants and application of petitioners for review by the Supreme Court was denied January 16, 1986. Bird, C. J., and Grodin, J., were of the opinion that the petition and application should be granted.