[No. C006611. Third Dist. Jan. 30, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDY WILHELM SCHROEDER, Defendant and Appellant.

COUNSEL

Stephen A. Munkelt and Laurence Montgomery, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael J. Weinberger and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCOTLAND, J.—A jury convicted defendant of two counts of conspiracy (Pen. Code, § 182), one count of submitting a fraudulent insurance claim (former Ins. Code, § 556, subd. (a)(1)), and three counts of preparing a writing in support of a fraudulent insurance claim (former Ins. Code, § 556, subd. (a)(4)).[1] On appeal, he contends that the trial court erred in persuading a defense witness to assert her Fifth Amendment privilege and refuse to give testimony which might incriminate her. We agree and shall reverse the judgment.

FACTS

The prosecution presented evidence that defendant had participated with a married couple, the Semprochs, in a plan to defraud the Semprochs' insurance carrier. Defendant was a salesman for a company which sold prebuilt home addition kits. Defendant prepared backdated receipts for the

---

[1] Former Insurance Code section 556 has been repealed and replaced by Insurance Code section 1871.1. (Stats. 1989, ch. 1119, §§ 1, 3.)

Semprochs' purchase of three sunroom kits. The receipts were used in an attempt to persuade the Semprochs' insurance carrier that the kits had been delivered before, and destroyed in, a fire which occurred at their home.

Defendant admitted backdating the receipts. His defense was that the Semprochs told him the insurance adjuster was aware of and had essentially approved the plan to submit these receipts to compensate the Semprochs for other losses which the insurance company was not going to cover.

Todd Smith, the prosecution's primary witness, was a salesman trainee under defendant at the time these events occurred and took part in the transactions. While he testified that defendant participated in preparing the backdated receipts, Smith confirmed that the Semprochs suggested this procedure and created the impression that the insurance company had approved of the manner in which the claims were being handled.[2]

Both Smith and defendant testified Ms. Semproch participated in some of the relevant discussions, and defendant sought to call her as a witness. Semproch's attorney appeared with her, informed the court that he had advised her of her Fifth Amendment rights, and indicated that he had recommended she not testify because she had entered a "conditional plea" in connection with these events and was awaiting sentence. Nevertheless, Semproch was willing to testify. However, after repeated warnings by the trial court that it would not be in her best interests to do so, she decided not to give evidence.

## DISCUSSION

■ The right of a criminal defendant to present a defense and witnesses on his or her behalf is a fundamental element of due process guaranteed under the Fourteenth Amendment to the United States Constitution. (*Webb* v. *Texas* (1972) 409 U.S. 95, 98 [34 L.Ed.2d 330, 333, 93 S.Ct. 351]; *Washington* v. *Texas* (1967) 388 U.S. 14, 19 [18 L.Ed.2d 1019, 1023, 87 S.Ct. 1920].) Article I, section 15 of the California Constitution embodies this protection. (*In re Martin* (1987) 44 Cal.3d 1, 30 [241 Cal.Rptr. 263, 744 P.2d 374].) The right is violated whenever the misconduct of a representative of the state persuades a defense witness not to testify at trial. (*Webb*, *supra*, 409 U.S. at p. 98 [34 L.Ed.2d at p. 333]; *Martin*, *supra*, 44 Cal.3d at pp. 30-31.)

For example, a defendant is impermissibly deprived of the right to call witnesses in his or her defense when the prosecutor goes beyond simply

---

[2]The insurance adjuster testified that he had not authorized the Semprochs to submit claims for property not destroyed in the fire.

warning a potential defense witness of the risk of self-incrimination and causes him or her not to take the stand by threatening the witness with prosecution should he or she testify. (*In re Martin, supra*, 44 Cal.3d at pp. 34-35, 36-37, 43-44, 48, 51-52; *People* v. *Warren* (1984) 161 Cal.App.3d 961, 967-970, 973-976 [207 Cal.Rptr. 912]; *People* v. *Bryant* (1984) 157 Cal.App.3d 582, 588-589, 593-594 [203 Cal.Rptr. 733].)

Similarly, a defendant's right to due process of law can be violated by judicial conduct. For example, in *Webb* v. *Texas, supra*, 409 U.S. 95 [34 L.Ed.2d 330], the trial court committed reversible error when it dissuaded the sole defense witness from testifying by warning him that anything he said could be used against him and by stating that if the witness lied under oath, the court would personally see that the grand jury would indict him for perjury, that he likely would be convicted thereof, and that the sentence imposed would be consecutive to the term the witness currently was serving on another conviction. (*Id.*, at pp. 95-96 [34 L.Ed.2d at p. 332].) The Supreme Court held that the court's lengthy and unnecessarily intimidating warning effectively "drove that witness off the stand" and thus deprived the defendant of due process of law. (*Id.*, at p. 98 [34 L.Ed.2d at p. 333].)

In order to establish a violation of due process of law, a defendant must show (1) a governmental agent performed acts entirely unnecessary to the proper performance of his or her duties which were of such a nature as to persuade a willing witness not to testify; (2) this misconduct was a substantial cause in the witness's change of mind; and (3) the potential witness's testimony would have been "material." (*In re Martin, supra*, 44 Cal.3d at pp. 31-32; *People* v. *Harbolt* (1988) 206 Cal.App.3d 140, 152 [253 Cal.Rptr. 390].) Under the federal standard of materiality, the defendant is required to make a plausible showing the testimony would have been material and favorable to the defense. The California standard requires only a reasonable possibility the witness could have given material and favorable testimony. (*In re Martin, supra*, at pp. 31-32.) The California standard of materiality is satisfied where the witness either participated in the charged crime or was an eyewitness in a position to observe the relevant events. (*Cordova* v. *Superior Court* (1983) 148 Cal.App.3d 177, 181-182 [195 Cal.Rptr. 758].)

██ The primary question before us is whether the trial court, in admonishing Semproch concerning her privilege against self-incrimination, performed acts unnecessary to the proper discharge of its duties. ██ When it appears that a witness may give self-incriminating testimony, the court has a duty to ensure that the witness is fully apprised of his or her Fifth Amendment rights. The court may do so by appointing counsel to advise the witness, or the court may elect to discharge this duty itself. (*People* v. *Warren, supra*, 161 Cal.App.3d at p. 972.) If the court chooses

the latter, it "must walk the fine line between, on the one hand, fully advising the witness of the danger of self-incrimination and the right not to testify, and, on the other hand, threatening the witness to an extent which materially impairs the defendant's due process right to present witnesses in his defense." (*Ibid.*)

■ While we have no doubt that the trial court had good intentions in admonishing Semproch concerning her rights, it is clear that the trial court misperceived its role and overstepped the bounds of permissible judicial intervention.

Semproch already was represented by counsel, Mr. Lasich, who informed the court that he had advised her of her Fifth Amendment rights and had strongly urged her to claim the privilege because her testimony might harm her with respect to her forthcoming sentencing hearing. Although it did not need to do so, the court then readvised Semproch concerning her privilege against self-incrimination. In responding to questioning by the court, Semproch stated that she had had an opportunity to discuss the matter with her attorney, that she understood her rights, and that she nonetheless wished to testify.

At this point, the trial court had discharged its duty. Yet, it continued to question Semproch regarding her decision. The court repeatedly asked if she understood that her attorney was advising her to refuse to answer questions. Then the court recessed the proceedings so counsel could discuss the matter. When the proceedings were reconvened, the court had Semproch testify outside the presence of the jury "so that the Court can determine whether or not she should be called in the presence of the jury."

As defense counsel began to examine the witness, the court interrupted stating: "Mrs. Semproch, what I want you to do before you answer questions is consult with your lawyer if he indicates he wants to consult with you." Although Semproch indicated a willingness to answer questions, her counsel again stated that he was advising her not to answer. The court intervened once again, and the following colloquy occurred:

"THE COURT: . . . [T]he Court feels some obligation to deal with some competing interests here. I have an interest in seeing [defendant] receive a fair trial. I also have an interest in seeing if your client has the sense to understand what you're talking about. I don't have a right to inquire as to your conversations. I think the privilege is between you and your client. But I have never seen yet at least—I might be seeing it today, a client fail to follow her attorney's advise [*sic*] when advised that answers he or she may give could result in he or she being incriminated in that those questions can

be used against you, Mrs. Semproch, in your own case. You may not understand how.

"Ms. SEMPROCH: I can't imagine.

"THE COURT: Well, you may not have the foggiest idea of how, but that's what your lawyer's job is, is to explain to you how, so that you can imagine. [¶] Now, if you need some time to discuss this, Mr. Lasich, with your client, if you feel that it's okay with you if she goes ahead, I mean I know the conversations you've had with her, then that's okay with me. But somebody around here ought to have some understanding of what this Fifth Amendment is about and how it works. In this particular instance, Mrs. Semproch, how it may result in—I don't know if it means your plea being accepted or rejected, or whether or not you end up going to prison or not. I have no idea, but you better have some idea. So if you need more time to discuss this, Mr. Lasich, you let me know now.

"MR. LASICH: I don't think we need anymore [sic] time, Your Honor. You are seeing it for the first time today. Mrs. Semproch, I think I have a feeling that she wants to answer questions, to use this as a forum to express her innocence in the whole matter . . . .

"Ms. SEMPROCH: This is my question. I mean, if there hasn't been any such thing asked of me, if there is on an individual question did I say that, I refuse to answer on the ground it may—

"THE COURT: What your lawyer is telling you is the questions even asked up till now could tend to incriminate you by putting you in the same place with that person. It tends in reason to show that there was some opportunity for you to form an agreement. You're not supposed to try to outsmart anybody here, Mrs. Semproch.

"Ms. SEMPROCH: I'm not. What I am saying, I haven't been able to tell the truth. Our side has not been told. So I just felt it would be fair for me to be able to. Now if I can't even do that.

"THE COURT: It's not a question of whether or not you can do it. You can do it. The question is whether or not it's in your own best interests. Your lawyer's telling you it isn't. You want to—if you want to put your desire to tell the truth ahead of your best legal interests, you might choose to do that. But you're [sic] lawyer's I think trying to tell you he has the opinion that it's not in your best interests to use this forum to tell your side of the story.

"MR. LASICH: And my position is clear. That is exactly my position, Your Honor, and I advised my client that this is not the forum where you should attempt to expound upon your positions, or your belief in your innocence to the charges that you faced over the last several months here in Nevada County.

"MS. SEMPROCH: Facts. So you're saying just take the Fifth and don't answer anything even though it's just a fact.

"THE COURT: That's what your lawyer's telling you. It's not whether or not it's a fact, it's whether or not it's a fact that might be used against you in your own case.

"MS. SEMPROCH: Well, then I don't know what the benefit [is] of being called here if I am being advised to take the Fifth.

"THE COURT: There may not be any benefit to you, Mrs. Semproch.

"MS. SEMPROCH: I mean to anyone, because I was willing to come and fully honor the subpoena.

"MR. LASICH: You have honored the subpoena. You have made the appearance in court. You are here and your attorney of record is here with you. You have honored the subpoena. The fact that you refuse to answer questions based on your rights under the United States Constitution is not a dishonor of this court or a dishonor of the subpoena.

". . . . . . . . . . . . . . . . . . . .

"THE COURT: If she doesn't answer it cannot be held against her. I think you're clear about that, Mrs. Semproch. All your obligation was for today was to come here.

"MS. SEMPROCH: I understand that.

"THE COURT: You have done that. You've got no burden to do anything beyond that.

". . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . I mean, what I think what counsel is saying is you can choose. You can choose to disregard your lawyer's advice, and you run the risk then of incriminating yourself as to everything you say. And that anything you say in this proceeding can be used against you in your case

that's pending. It can be used against you if you—I understand that you have some desire to appeal. If you win the appeal, you come back and you've got this case against you. This transcript that you make today can be used against you in that proceeding. Your lawyer may just feel that it's a tactical disadvantage for you to have committed yourself on the record, I have no idea. But the thing is you are going to decide one way or another whether or not you want to take a lawyer's advice or handle it yourself. [¶] You know, you can also decide whether or not you want to have brain surgery, Mrs. Semproch, or leave it up to a neurosurgeon. You know, you can decide, well, you think you're okay so you're not going to have brain surgery, or you can leave it up to a neurosurgeon to advise you because they're trained in that field. It's kind of similar to that. [¶] Now, you might want to think about it. You look confused, [DEFENSE COUNSEL ]. I'm suggesting that—

"[DEFENSE COUNSEL ]: I'm only concerned about the analogy, Your Honor.

"THE COURT: It's a pretty tame analogy, I think, people go to experts for opinions, and they're supposed to rely on them generally. They can choose, and a lot of people do not have surgery.

"[DEFENSE COUNSEL]: My concern, Your Honor, is at some point in discussions about incrimination it is possible that a witness can be coerced or intimidated by the import of the remarks made not to testify when in fact their [sic] voluntary choice would have been to testify. I am concerned that we not create a graphic illustration which maybe crosses that line, that is all.

"THE COURT: All right. I think it's a real apt illustration myself, and it's one I used with clients for years. I think it's completely appropriate. [¶] So in any event, what you need to do, Mrs. Semproch, and what I'm going to give you the rest of the noon hour to do, is to discuss this matter with your lawyer and decide if you want to follow his advice or not in this regard . . . .

". . . . . . . . . . . . . . . . .

"MR. LASICH: Your Honor, we've talked about. [sic] Mrs. Semproch's position is that she wants—and she can verify it or disavow it right now. Her position is that she wants to testify because she feels that the court and the county has not heard her position in regard to all these charges that have been leveled against her.

"Ms. SEMPROCH: I've been grouped into three. Right.

". . . . . . . . . . . . . . . . .

"THE COURT: All right. You have heard it, I guess, Mrs. Semproch. Do you want to follow your lawyer's advice or not?

"Ms. SEMPROCH: I guess I don't want brain surgery, so yes, I do. I guess. If that's his strict advice then I have to follow it."

This lengthy interchange makes it clear that the trial court exceeded its duty simply to ensure the witness was fully apprised of her privilege against self-incrimination. She was so advised and expressed her desire to testify. At this point, the court had no duty, and no right, to prevent a willing witness from incriminating herself or to convince her to follow her attorney's advice not to testify. Yet, the trial court in essence became an advocate repeatedly cautioning Semproch about the folly of her decision. Even after defense counsel expressed concern that the court's comments were bordering on coercion and intimidation, the court persisted.

Not only were the court's actions wholly unnecessary to the proper discharge of its duties, they unquestionably were coercive in context. Simply by the nature of the proceedings, the court's words carried an intimidating force. This is particularly so here since Semproch had entered a plea in her case and may have been wary of doing anything which might displease the court. By its frequent interruptions, admonishments and questions, the court inappropriately made clear to Semproch that it disagreed with her intended action and felt that she should not testify.

It is equally clear that the court's conduct was a substantial cause of the witness's decision not to testify. In fact, it was the trial court's brain surgery analogy that finally convinced Semproch that she *had* to follow her attorney's advice and decide not to testify.

Lastly, the record establishes prejudice in that Semproch's testimony would have been "material" to the defense. She was a direct participant in the alleged crime and thus was in a position to provide relevant evidence in defendant's defense. (*Cordova* v. *Superior Court, supra,* 148 Cal.App.3d at pp. 181-182.) Todd Smith, the prosecution's key witness, corroborated defendant's testimony that the Semprochs had suggested the insurance adjuster was aware of the way in which the receipts and claims were being handled. Testimony on this issue by Ms. Semproch was critical to defendant's theory of the case. The court's action in dissuading Semproch from

testifying severely handicapped the defense and requires reversal of the judgment.

## DISPOSITION

The judgment is reversed.

Puglia, P. J., and Sparks, J., concurred.